Dear Mr. Daniel:
This official opinion is issued in response to the following question:
 Whether the Ox Bow Lakes, Northwest Missouri (along the Missouri River), specifically Bean, Sugar, Contrary, South and Big Lakes, are waters of this state? (The answer to which will determine if the Missouri State Water Patrol can enforce state laws on these waters.)
The answer to your question is determined by the definition of "waters of the state" found in Section 306.010(7), RSMo Supp. 1982. The authority of water patrolmen, employed by the Division of Water Safety, is set forth in Section 306.165, RSMo 1978, in terms of the "waterways of this state." Section 306.010(7),supra, defines "waters of this state" as:
 [A]ny waters within the territorial limits of this state and lakes constructed or maintained by the United States Army Corps of Engineers except bodies of water owned by a person, corporation, association, partnership, municipality or other political subdivision, public water supply impoundments, and except drainage ditches constructed by a drainage district, but the term does include any body of water which has been leased to or owned by the state department of conservation.
The authority of water patrolmen is limited in Section306.165 to waterways of this state and areas of land bordering said waterways. Chapter 306 contains additional references to "waters of this state" when defining water safety violations,e.g., Sections 306.130 and 306.190, RSMo 1978.
The definition of waters of this state was changed by the legislature in 1979 and the requirement of navigability was removed. Section 306.010(7), supra. Currently, any waters within the borders of the State of Missouri which do not fall within one of the exceptions enumerated in Section 306.010(7), supra, are waters of this state. To answer your question, it must be determined whether or not Bean, Sugar, Contrary, South and Big Lakes are bodies of water owned by a person, corporation, association, partnership, municipality, or other political subdivision, public water supply impoundments or are drainage ditches.
It is this office's understanding that the "Ox Bow" Lakes were formed by sudden changes in the main channel of the Missouri River which rendered the lakes from the previous main river channel. Several of these "sudden changes" formed the bases for litigation over land titles and state boundaries.
 [I]n 1877 the river above Omaha, which had pursued a course in the nature of an ox-bow, suddenly cut through the neck of the bow and made for itself a new channel. . . . [T]he centre line of the old channel . . . became a fixed and unvarying boundary, no matter what might be the changes of the river in its new channel. Nebraska v. Iowa, 143 U.S. 359, 370, 12 S.Ct. 396, 400, 36 L.Ed. 186 (1892).
 [O]n . . . July 5, 1867 . . . within twenty-four hours and during a time of very high water, the river, which had for years passed around what is called McKissisck's Island, cut a new channel across and through the narrow neck of land at the west end of Island Precinct (of which McKissisck's Island formed a part), about a half mile wide, making for itself a new channel . . . After that change the river ceased to run around McKissisck's Island. Missouri v. Nebraska, 196 U.S. 23, 34 25 S.Ct. 155, 157, 49 L.Ed. 372 (1904).
When new states are admitted into the Union, title to land under all navigable waters within such states pass to the new state. For example, through congressional grant at the time of entry into the Union, the admitted state would take title to the river bed under a navigable river. If the waters are not navigable in fact, the title of the land underlying them is unaffected by the formation of the new state and remains in the United States. United States v. Oregon, 295 U.S. 1, 14, 55 S.Ct. 610,615, 79 L.Ed. 1267 (1935). Additionally, an avulsion, or sudden change in a river bed, does not change title to the river bed although the channel may have changed. Missouri v. Nebraska,196 U.S. at 35-36.
The boundaries of the State of Missouri were changed in 1836 to extend to the Missouri River on the west in the areas now occupied by Atchison, Holt and Buchanan Counties. 5 Stat. at Large 34, Chapter 86 ("An Act to Extend the Western Boundary of the State of Missouri to the Missouri River"). At the time of this extension of boundaries, the State of Missouri took title was the river bed of the Missouri River. Missouri v. Nebraska,196 U.S. at 26-27. The basis for the state's assumption of title is that at the time of the 1836 grants of lands by Congress and the admission of Missouri into the Union the Missouri River was navigable. Cooley v. Golden, 117 Mo. 33, 44-47, 23 S.W. 100,104-105 (Mo. banc 1893). With these legal principles in mind, we will address the status of each lake included in your inquiry.
In the case of Schreve v. Boil, which was not appealed, the Circuit Court of Buchanan County found that Lake Contrary, although formed prior to 1821 when Missouri was admitted into the Union, was a navigable lake at the time of admission into the Union and therefore title thereto passed to the State. Thus, your question with respect to Lake Contrary must be answered in the affirmative in that it has already been determined by a court of competent jurisdiction that the lake is a "water of this state", and therefore the Water Patrol has the authority to enforce the laws of the State of Missouri upon that lake.
This office has previously issued opinions with respect to Bean and Big Lake and the ownership of those bodies of water. Opinion Nos. 10 (1971) and 275 (1965). Copies of those opinions are attached for your consideration. As is pointed out in Opinion No. 371 (1967), the time at which Bean Lake was formed is unknown. However, a number of the Ox Bow Lakes were formed in the late 1890s during great floods at that time, as well as during the 1867 flood. If an assumption is made that Bean Lake was formed after Missouri became a state, and was a part of the Missouri River channel at that time, title thereto vested in the state and Bean Lake would not fall within one of the exceptions of waters of the state set forth in Section 306.010(7), supra. Even if one presumes that Bean Lake was formed prior to 1821, this conclusion would not change given the rationale contained in Schreve v. Boil,supra. Given the current size and character of Bean Lake, it is reasonable to assume that it was navigable in fact at the time Missouri entered the Union.
In July, 1965, this office issued an opinion, No. 242, regarding the rightful and legal ownership of the real estate known as Big Lake. At the time of the issuance of this opinion, this office did not have information with respect to the time during which the Big Lake was formed from the Missouri River channel. Big Lake is located in an area known as the Plat Purchase which was joined to the state in 1837. If Big Lake was, at that time, part of the main river channel, title to its bed would have passed to the State of Missouri and it would be a water of this state for purposes of the Department of Public Safety's jurisdiction. Assuming that Big Lake was formed after 1837, the answer to your question regarding that lake's status as a water of the state would be answered in the affirmative.
Sugar Lake is located "by" the Lewis and Clark State Park. A perusal of a survey map of the area reveals that Sugar Lake is an "Ox Bow" Lake that at one time was a part of the Missouri Channel. No information as to when the lake was formed is available. However, the State of Missouri holds title to several plots of land bordering upon the lake. Even if one were to assume that the Lake was formed prior to 1821 and was not navigable in fact so that Missouri would not have taken title to the lake bed at that time, as a littoral land owner, Missouri would own a portion of the lake bed which would preclude the lake from coming within any exception contained in Section 306.010(7), supra. We therefore conclude that Sugar Lake is a water of the State for purposes of law enforcement authority.
This office has not previously issued any opinions with respect to South Lake in the Ox Bow chain. No information is available which could be relied upon to determine the ownership of South Lake at this time. To determine whether or not the United States retained title to these lands which it would have then passed on to subsequent owners through patents would require an extensive examination of the titles of each riparian land owner at South Lake. As it is at this time impossible to determine the ownership of South Lake, this office declines to issue an opinion which respect to that question. If one assumes that the lake was formed following a congressional grant of the Missouri River channel, the lake would, as Bean, Contrary, and Big, be state waters and subject to the jurisdiction of the Missouri Water Patrol. If the lake was formed prior to the grant of land, but was navigable in fact as Lake Contrary, then it would also be a water of this State as defined in Section 306.010(7), supra.
CONCLUSION
It is the opinion of this office, based upon the information available to it with respect to the dates and manner in which the various lakes which you have inquired about were formed, that Bean, Contrary, Sugar and Big Lakes are waters of this state within the definition of Section 306.010(7), RSMo Supp. 1982, for purposes of determining the jurisdiction of Missouri State Water Patrolmen for enforcement of Missouri statutes on those bodies of water. It is further the opinion of this office that it is at this time impossible to determine the ownership of the lake bed of South Lake, and therefore this office declines to issue a formal opinion with respect thereto.
Very truly yours,
 JOHN ASHCROFT Attorney General